IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

THURSIE MARTIN                                                                        PLAINTIFF

V.                              CIVIL NO. 10-5088

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Thursie Martin, brings this action pursuant to 42 U.S.C.§ 405(g), seeking judicial review of a decision of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C.§ 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed an application for DIB on July 18, 2007, alleging an inability to work since February 20, 2007, due to problems with both feet, osteoarthritis, fibromyalgia, chest pain, stomach problems, and depression. (Tr. 52, 78). For DIB purposes, Plaintiff maintains insured status through December 31, 2011. (Tr. 110). An administrative hearing was held on August 28, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 11-38).

By written decision dated October 21, 2008, the Administrative Law Judge (ALJ) found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 46). Specifically, the ALJ found Plaintiff had the following severe impairments:

osteoarthritis, fibromyalgia, and mood disorder. (Tr. 46). However, after a review of all the evidence, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 46-47). The ALJ found Plaintiff retained the residual function capacity (RFC) to perform sedentary work, except that Plaintiff could perform only unskilled work. (Tr. 47-49). With the help of a vocational expert (VE), the ALJ determined Plaintiff could not perform her past relevant work as a postal supervisor, but could perform substantial gainful activity in the national economy. (Tr. 49-50). Specifically, the ALJ found that Plaintiff could perform work in the national economy as a small product machine operator and food order clerk. (Tr. 50).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 15, 2010. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

decided the case differently. Haley v. Massanari, 258 F.3d 742,747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairments" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R.§ 404.1520.

**III.     Discussion:**

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. See Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004). It is assessed using all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore an "ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).

In making the RFC determination, the ALJ noted that the evidence showed that Plaintiff's pain was all but ameliorated by the combination of her medications and limiting herself to no more than sedentary activity as set out in the RFC. (Tr. 49). The ALJ stated that this determination was supported by the recommendations of Dr. Stephen Pirotta. (Tr. 48). In addition, the ALJ noted that Plaintiff had the ability to perform extensive activities of daily living. (Tr. 50). Finally, the ALJ noted that while Plaintiff had a Functional Capacity Evaluation (FCE) which stated that "[h]er low level of function does not allow her to work over the course of entire 8 hour work day," this opinion was made by a non-medical examiner and was thus afforded less weight. (Tr. 49, 250).

A review of the medical records reveals Plaintiff has sought treatment for chronic pain in both feet, fibromyalgia, osteoarthritis, edema, and paraesthesia.[1] On October 19, 2005, Plaintiff underwent surgery performed by podiatrist Dr. Stephen S. Pirotta, to relieve pain in both her feet related to Calacenal Exotosis and Chronic Plantar Fasciitis. (Tr. 226-227). Over the next two years, Plaintiff saw Dr. Pirotta on eleven different occasions for post-operative treatment, including three appointments after the alleged onset date. (Tr. 212-225, 234).

On July 26, 2006, Dr. Pirotta recommended that Plaintiff see rheumatologist Dr. Michael R. Saitta at the Arthritis Center of the Ozarks, because he suspected that some of her pain might be the result of fibromyalgia. (Tr. 216). Plaintiff saw Dr. Saitta on ten different occasions from August 30, 2006, to May 31, 2007. (Tr. 159-176). Dr. Saitta diagnosed Plaintiff as suffering from fibromyalgia and osteoarthritis. (Tr. 168). Between February 15 and February 22, 2007, Plaintiff saw Dr. Saitta on three different occasions to receive injections of Synvisc in her left knee. (Tr. 163). Between March 22 and April 5, 2007, Plaintiff saw Dr. Saitta on three different occasions and received injections of Synvisc in her right knee. (Tr. 162).

In a letter to the Advanced Foot and Ankle Clinic on May 15, 2007, Dr. Pirotta noted that Plaintiff's foot problems persisted after the surgery and continued to be unresolved, despite treatments including injections, deep electrical stimulation, physical therapy, various medications, rest, and changing of shoe gear. (Tr. 213). In notes from Plaintiff's appointment on June 4, 2007, Dr. Pirotta stated that he would continue to follow Plaintiff's condition, "but at this point it seems

---

[1]Paraesthesia- an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus. Dorland's Illustrated Medical Dictionary 1404 (31st ed. 2007).

like there is not much more I can do to help." (Tr. 212). In notes from Plaintiff's appointment on November 20, 2007, Dr. Pirotta stated:

> I suspect she would probably not be able to hold down any type of job with her condition unless she is able to be completely sedentary. I am not sure she is qualified for such a job and I do not know that other issues such as her back would allow her to do that as well. That is something someone else would need to decide upon.

(Tr. 234).

On January 4, 2008, Plaintiff saw Dr. Mark A. Bonner for complaints of fatigue, generalized weakness, and malaise. (Tr. 236). Dr. Bonner noted that Plaintiff was suffering from edema and paraesthesia in her right fingers of moderate severity. Dr. Bonner determined that the status of both the edema and paraesthesia was worsening. (Tr. 236).

In this case, the ALJ determined that Plaintiff retained the RFC to perform unskilled sedentary work. Sedentary work requires occasional walking and standing. 20 C.F.R. § 404.1567(a). This means a person must have the ability to walk or stand for up to two hours in an eight hour day and sit for six hours out of an eight hour work day. SSR 83-10, 1983 WL 31251, *5-6. At her hearing before the ALJ, Plaintiff testified that she could only stand for ten minutes at a time, walk for fifteen minutes at time, and sit for thirty minutes at a time before experiencing pain and swelling. (Tr. 24-25). She explained that she spent most of her day lying down with her feet up to avoid pain. (Tr. 25). Plaintiff's descriptions of her abilities are consistent with Dr. Pirotta's assessment that it was unlikely that Plaintiff would be able to hold down a job unless it was completely sedentary. At the hearing, the VE testified that if a sit/stand option or requirement of unscheduled breaks to lay down and rest was added to the RFC, there would not be any jobs which Plaintiff could work in the national economy. (Tr. 37). In addition, the Plaintiff's FCE assessment,

stating that she would be unable to work over the course of an eight hour work day, is consistent with Dr. Pirotta's assessment.  While the ALJ stated that he accorded the opinion contained in the FCE assessment less weight because it was completed by a non-medical examiner, it appears that he gave great weight to the parts which supported his conclusion and disregarded the portions which were in conflict with it.

Unskilled sedentary work also requires "good use of the hands and fingers for repetitive hand-finger actions."  SSR 83-10, 1983 WL 31251, *5-6.  Plaintiff's FCE assessment on October 31, 2007, noted that she demonstrated the ability to handle and finger on a frequent basis.  (Tr. 249).  However subsequent to that assessment, on January 4, 2008, Dr. Bonner noted that Plaintiff had worsening edema and paraesthesia in her right fingers.

In addition, the Court also notes that the ALJ's findings that Plaintiff had the ability to perform extensive activities of daily living and that her medications were effective, are inconsistent with the Plaintiff's testimony and the evidence in the record.  In a Disability Report dated September 24, 2007, Plaintiff's counsel described Plaintiff's day as follows:

> Wakes up 5-6 am: Moves from bed to couch for another 2 hours, then goes back to bed to sleep for 1-2 hours. Eats lunch (bowl of cereal or simple heat up), takes medications. Awake for 1 hour and back to sleep for three hours. 10 pm back to bed.

(Tr. 131).  At her hearing before the ALJ, Plaintiff testified that she spent most of her day lying down and that she did not do household chores on a regular basis.  (Tr. 25, 27).  Plaintiff further testified that when she did do chores, she often needed to stop and take a break.  (Tr. 28).  As to her medications, Plaintiff testified that she still had pain and that the medications affected her ability to think.  (Tr. 32).  In her opening statement at the hearing, Plaintiff's counsel described the

medications as rendering Plaintiff "almost like a zombie." (Tr. 14). Plaintiff testified that because of her medications, she often could not understand things she read or saw on television, and could not write down on paper what she was thinking in her head. (Tr. 18-19, 26, 34).

The record clearly shows that Plaintiff's treating physicians, Dr. Pirotta and Dr. Bonner, have noted conditions which might preclude Plaintiff from performing sedentary work. Particularly troubling to the undersigned is the opinion of Dr. Pirotta, in which he noted that Plaintiff would only be able to hold a job if it was completely sedentary. Without further clarification, this statement could be interpreted to mean that Plaintiff would not be able to stand or walk up to two hours a day as required to perform sedentary work. After reviewing the entire evidence of record, the undersigned does not find substantial evidence to support the ALJ's RFC determination, and believes remand is necessary so that the ALJ can more fully and fairly develop the record.

The Court further notes that while Plaintiff was diagnosed with fibromyalgia and the ALJ found it be a severe impairment, the ALJ did not discuss it to any great degree in his opinion. The Court suggests that on remand, in re-evaluating Plaintiff's RFC, the ALJ should address Plaintiff's fibromyalgia.

On remand, the ALJ is directed to submit interrogatories to the physicians who have evaluated and/or treated Plaintiff -- including Dr. Stephen Pirotta, Dr. Michael Saitta, and Dr. Mark Bonner -- asking the physicians to review Plaintiff's medical records; to complete a RFC assessment regarding Plaintiff's capabilities during the time period in question; and to give the objective basis for their opinions so that an informed decision can be made regarding Plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. If the ALJ is

unable to obtain a RFC assessment from a treating physician, the ALJ should obtain one from a non-examining medical consultant who has reviewed the medical evidence for the relevant time period. The ALJ may also order a consultative examination, in which the consultative examiner should be asked to review the medical evidence of record, perform examinations and appropriate testing needed to properly diagnose Plaintiff's conditions, and complete a medical assessment of Plaintiff's abilities to perform work related activities. See 20 C.F.R. § § 404.1517, 416.917.

With this evidence, the ALJ should then re-evaluate Plaintiff's RFC and specifically list in a hypothetical to a vocational expert any limitations that are indicated in the RFC assessments and supported by the evidence.

**IV.     Conclusion:**

Accordingly, the undersigned concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C.§ 405(g).

DATED this 13th day of July 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE